UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MALKA KUMER; CHANA LIBA KUMER; MIRIAM
ALMACKIES; CHAIM KAPLAN; RIVKA KAPLAN;
BRIAN ERDSTEIN; KARENE ERDSTEIN; MA'AYAN
ERDSTEIN; CHAYIM KUMER; NECHAMA KUMER;
LAURIE RAPPEPORT; MARGALIT RAPPEPORT;
THEODORE (TED) GREENBERG; MOREEN
GREENBERG; JARED SAUTER; DVORA CHANA
KASZEMACHER; CHAYA KASZEMACHER
ALKAREIF; AVISHAI REUVANE; ELISHEVA ARON,
YAIR MOR; and MIKIMI STEINBERG,

Case No.

**COMPLAINT**

Jury trial demanded

                Plaintiffs,

                -against-

HEZBOLLAH
(a/k/a Hizbullah, Hezballah, Hizballah),

                Defendant.
-------------------------------------------------------------------X

      Plaintiffs, complaining of the Defendant, by their attorneys, The Berkman Law Office, LLC, allege for their Complaint as follows:

## INTRODUCTION

      1.      This is an action pursuant to the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333, brought by American citizens harmed by or as the result of rockets and missiles fired by the Hezbollah terrorist organization at civilians in Israel, in the summer of 2006.

## JURISDICTION

      2.      This Court has subject-matter jurisdiction over this action pursuant to 18 U.S.C. § 2333 and 28 U.S.C. § 1331.

3. This Court has personal jurisdiction over Hezbollah because Hezbollah's conduct in this case was intentionally directed at the United States, was intended by Hezbollah to harm the United States, and did in fact cause harm to the United States. This Court also has personal jurisdiction over Hezbollah because in the years prior to the 2006 rocket and missile attacks, Hezbollah and its agents and co-conspirators transferred at least $50 million through the U.S. banking system, which funds Hezbollah used to carry out those attacks.

## THE PARTIES

4. The plaintiffs are U.S. citizens who were harmed by or as the result of rocket and missile attacks on northern Israel carried out by defendant Hezbollah between July 12 and August 14, 2006. The details of the attacks and of plaintiffs' harm are set forth below.

5. The plaintiffs are all American citizens and civilians, who were harmed by the terrorist rocket attacks.

6. Defendant Hezbollah is a terrorist organization headquartered in Lebanon and is a "person" within the meaning of 18 U.S.C. § 2331.

## STATEMENT OF FACTS

### Hezbollah

7. Hezbollah was established in Lebanon circa 1982.

8. At all times Hezbollah is and was a radical Islamic terrorist organization which views the State of Israel, the United States and other Western countries as its enemies.

9. Since its founding and until July 12, 2006 (and until the present day), Hezbollah has been and remains, as a matter of official policy, extremely hostile to the United States and to its closest ally in the Middle East, the State of Israel.

10. Since its founding and until July 12, 2006 (and until the present day), it has been the continuous and official policy and goal of Hezbollah:

    a. To weaken, harm and undermine the United States militarily, economically and politically;

    b. To bring about and cause the eradication of the State of Israel, the closest ally of the United States in the Middle East, and its replacement with an Islamic state; and

    c. To bring about and cause the murder and/or expulsion of the Jewish residents of the State of Israel.

11. Specifically, since its founding until July 12, 2006 (and until the present day), it has been the continuous and official policy of Hezbollah to use terrorism (a) to intimidate and influence the United States government and public and thereby to weaken, harm and undermine the United States militarily, economically and politically and (b) to intimidate and influence the Israeli government and public and thereby to bring about the eventual eradication of the State of Israel and its replacement with an Islamic state and the murder and/or expulsion of the Jewish residents of the State of Israel.

12. Since its founding until July 12, 2006 (and until the present day), Hezbollah has carried out thousands of terrorist attacks against American and Israeli targets, in which hundreds of innocent victims have been murdered and thousands more maimed.

13. At all times Hezbollah sought, as an official and publicly-stated policy and goal of Hezbollah, to destroy the State of Israel and murder or expel its Jewish residents.

14. At all times Hezbollah sought, as an official and publicly-stated policy and goal of Hezbollah, to ethnically cleanse the territory of the State of Israel of its Jewish population.

15. Since its founding and until July 12, 2006 (and until the present day), Hezbollah has sought to achieve its goal of destroying the State of Israel and murdering or expelling its Jewish residents through the use of terrorist attacks on Jewish civilians in Israel and elsewhere.

16. Since its founding and until July 12, 2006 (and until the present day), Hezbollah carried out hundreds of terrorist attacks against Jewish civilians in Israel and elsewhere, which have killed hundreds of innocent civilians and wounded hundreds more.

17. Since its founding and until July 12, 2006 (and until the present day), Hezbollah has carried out hundreds of terrorist attacks against American targets which have killed hundreds of U.S. citizens and wounded hundreds more.

18. The terrorist attacks committed by Hezbollah between 1982 and July 12, 2006, included, inter alia, the following:

   a. The July 19, 1982, kidnapping of American University president David S. Dodge in Beirut.

   b. The April 18, 1983, car bomb attack on the United States Embassy in Beirut in which 63 people were killed.

   c. The October 23, 1983, truck bomb attack on the U.S. Marine barracks in Beirut in which 241 American military personnel were killed.

   d. The September 20, 1984, car bomb attack on the U.S. Embassy annex in Beirut in which two Americans and 22 others were killed.

   e. The March 16, 1984, kidnapping and murder of William Buckley, a CIA operative working at the U.S. Embassy in Beirut.

   f. The April 12, 1984, attack on a restaurant near the U.S. Air Force Base in Torrejon, Spain in which eighteen U.S. servicemen were killed and 83 people injured.

g. The December 4, 1984, terrorist hijacking of a Kuwait Airlines plane in which four passengers were murdered, including two Americans.

h. The June 14, 1985, hijacking of TWA Flight 847 in which Robert Stethem, a U.S. Navy diver, was murdered. Other American passengers were held hostage before being released on June 30, 1985.

i. The February 17, 1988, kidnapping and subsequent murder of U.S. Marine Col. William Higgins.

j. The March 17, 1992, bombing of the Israeli Embassy in Buenos Aires that killed 29 people and injured over 200.

k. The July 18, 1994, bombing of the Jewish community center in Buenos Aires that killed 86 people and injured over 200.

l. The November 28, 1995, bombardment of towns in northern Israel with missiles aimed at Jewish civilians.

m. The March 30, 1996, bombardment of northern Israeli towns with 28 missiles. A week later, Hezbollah fired 16 additional missiles, injuring 36 Israelis.

n. The August 19, 1997, bombardment of northern Israel with dozens of missiles aimed at Jewish civilians.

o. The December 28, 1998, bombardment on northern Israel with dozens of missiles aimed at Jewish civilians.

p. The May 17, 1999 bombardment on northern Israel with dozens of missiles aimed at Jewish civilians.

q. The June 24, 1999, bombardment on northern Israel, killing 2 people.

r. The April 9, 2002, launching of missiles into northern Israeli towns.

      s.   The August 10, 2003, firing of shells that killed a 16-year-old Israeli boy and wound other Israelis.

19.    The courts of the United States have published numerous decisions finding that Hezbollah was responsible for carrying out terrorist attacks.

20.    Hezbollah has been designated by the United States Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

## The Hezbollah Rocket Attacks

21.    Between July 12, 2006 and August 14, 2006, Hezbollah fired thousands of rockets and missiles at civilians in northern Israel (collectively hereinafter: "Hezbollah Rocket Attacks").

22.    The plaintiffs were injured by the Hezbollah Rocket Attacks, as detailed below.

23.    In the summer of 2006, Malka Kumer was a 6-year-old living with her family in the small town of Safed, in the Upper Galilee region of Israel. During that summer she experienced hundreds of terrifying warning sirens followed by rocket strikes and explosions in, or within hearing distance of, Safed. She experienced and vividly recalls that summer as being spent running back and forth between the family home and a bomb shelter, always waiting in terror for the next attack. Those events severely and permanently traumatized Malka, and led directly to serious emotional problems that have afflicted her and disrupted her life ever since. The Hezbollah Rocket Attacks caused Malka severe and lasting psychological and emotional harm.

24.    Chana Liba Kumer, Malka's sister, was a 5-year-old living in Safed with her family in the summer of 2006. She, too, experienced and clearly recalls the sirens and explosions throughout July and August and repeatedly racing to the bomb shelter along with crowds of

panicked neighbors. She asked her mother who was firing the rockets and why they wanted to kill her, when she hadn't done anything to them; she remembers her mother telling her that it was "Hezbollah," but being unable or unwilling to explain further. She experienced her friends and their families leaving Safed for safer places after the rockets started falling, but her family being forced to stay behind, financially unable to leave, and simply praying for protection. She experienced being unable to go outside and play, staying indoors, at home or in a shelter, for over month, and hearing the chilling sounds of the warning sirens and the detonation of rockets. Chana Liba remembers not sleeping in her own room and bed during that period, as the family slept together on mattresses in the safest part of the apartment; and that when the attacks came during Shabbat meals, the entire family huddled together under the dining-room table for protection. All those experiences severely and permanently traumatized her. The Hezbollah Rocket Attacks caused Chana Liba Kumer severe and lasting psychological and emotional harm.

25. In the summer of 2006, Miriam Almackies was an 18-year-old living in Safed with her three-month-old infant son. Her husband, an Israeli citizen, was away from home during the Hezbollah Rocket Attacks, having been called up to perform military service. Alone with her baby for the duration of the attacks, the 18-year-old Miriam lived in constant terror of death or serious physical injury both for her infant and herself. As a result of the Hezbollah Rocket Attacks, Miriam Almackies experienced horrific trauma, and suffered severe psychological and emotional injuries.

26. On July 13, 2006, plaintiff Chaim Kaplan was severely injured by a Hezbollah rocket which landed in Safed next to his car. A second rocket struck the Kaplan family's home, narrowly missing Chaim's wife, plaintiff Rivka Kaplan. As a result of these rocket attacks plaintiffs Chaim and Rivka Kaplan suffered severe physical, psychological, and emotional injuries. In separate civil actions against the Islamic Republic of Iran and North Korea, the U.S. District

Court for the District of Columbia found that Chaim Kaplan's injuries entitle him to compensation in the amount of $3 million and that Rivka Kaplan's injuries entitle her to compensation in the amount of $2.5 million. *Kaplan v. Central Bank*, Civ. No. 10-00483 (RCL) ("*Kaplan*") at DE 65.

27. Plaintiffs Karen and Brian Erdstein resided in Safed at the time of the Hezbollah Rocket Attacks. Numerous rockets landed near the family's home. Karen was pregnant at the time the attacks began and due to the ongoing strain, stress and anxiety, and the rocket explosions near the Erdstein home she suffered a miscarriage and lost the baby. In the wake of the miscarriage, Karen suffered from post-partum depression, damage to her immune system and has developed other medical complications. Brian was greatly traumatized by the rocket attacks and the loss of the baby. In addition, as a result of the rocket attacks and the collapse of tourism in Israel, Brian, a licensed tour guide, lost all of his work and had extreme difficulties supporting his family. The Erdsteins' then-minor daughter, plaintiff Ma'ayan Erdstein suffered emotional and psychological trauma from the Hezbollah Rocket Attacks. Ma'ayan was diagnosed with permanent and severe emotional disorders and receives on-going psychiatric treatment and therapy. As a result of the Hezbollah Rocket Attacks, Brian, Karene and Ma'ayan Erdstein suffered severe physical, psychological, and emotional injuries. The *Kaplan* court found that the injuries suffered by Brian, Karene and Ma'ayan Erdstein entitle them to compensation in the amounts, respectively, of $2.5 million, $3.5 million, and $1.5 million. *Id*. at DE 65.

28. Plaintiff Chayim Kumer, a resident of Safed, suffered a nervous breakdown and was hospitalized as a result of the Hezbollah Rocket Attacks, which in turn caused severe harm to his wife, plaintiff Nechama Kumer. As a result of the Hezbollah Rocket Attacks plaintiffs Chayim Kumer and Nechama Kumer suffered severe psychological and emotional injuries. The *Kaplan*

court found that the injuries suffered by Chayim and Nechama Kumer entitle them to compensation in the amounts, respectively, of $2 million and $2.5 million.

29. On July 13, 2006 at approximately 7:00 p.m. a rocket launched by Hezbollah landed outside the home of plaintiffs Laurie Rappeport and her then-minor daughter Margalit in Safed. The powerful explosion threw Margalit, who was playing outside on a wall, a distance into the air. Laurie and Margalit suffered severe psychological trauma as a result of this rocket, and the carnage and destruction that they witnessed from other rockets which fell near their home. Ultimately, they fled the city. As a result of the Hezbollah Rocket Attacks Laurie and Margalit Rappeport suffered severe psychological and emotional injuries. The *Kaplan* court found that the injuries suffered by Laurie and Margalit Rappeport entitle them to compensation in the amounts, respectively, of $2.35 million and $1.5 million. *Id*. at DE 65.

30. In the summer of 2006, plaintiffs Theodore (Ted) Greenberg and Moreen Greenberg were the proprietors of a business in Safed catering to tourists. The Hezbollah Rocket Attacks caused a complete halt in tourism in northern Israel for several months during the peak tourism season, which in turn caused the Greenbergs' business to collapse, which caused them severe emotional distress. Theodore was then compelled to move to Jerusalem to find work, while Moreen remained behind in Safed. The couple also experienced suffered severe psychological trauma as a result of the carnage and destruction that they witnessed. As a result of the Hezbollah Rocket Attacks the Greenbergs suffered severe psychological and emotional injuries. The *Kaplan* court found that the injuries suffered by Theodore and Moreen Greenberg entitle them to compensation in the amount of $2.5 million each. *Id*. at DE 65.

31. In the summer of 2006, plaintiff Jared Sauter and his family lived in the town of Rosh Pina in the Galilee, where they had been for several happy years. Shortly after the start of

the Hezbollah Rocket Attacks, with rockets raining down on Rosh Pina, Jared and his family fled for their lives in terror to another city. They remained in the home of a relative for the duration of the attacks, but found it too traumatic and frightening to return to live in Rosh Pina. Jared was forced to relocate his family to a different city, and start over. As a result of the Hezbollah Rocket Attacks, and the trauma and disruption he experienced, Jared Sauter suffered severe psychological and emotional injuries. The *Kaplan* court found that the injuries suffered by Jared Sauter entitle him to compensation in the amount of $1.5 million. *Id*. at DE 65.

32. In the summer of 2006, plaintiff Dvora Chana Kaszemacher was the proprietor of an art gallery in the city of Safed (a business that caters almost exclusively to tourists). She was also the wife of an elderly Holocaust survivor, and the mother of daughters also living in Safed. The Hezbollah Rocket Attacks caused her severe anxiety and depression, which was exacerbated by her concerns about her husband and daughters. Additionally, the attacks resulted in a complete halt in tourism in northern Israel for several months during the peak tourism season, which in turn caused plaintiff Dvora Chana Kaszemacher severe financial damage. As a result of the Hezbollah Rocket Attacks, Dvora Chana Kaszemacher suffered severe psychological, emotional and financial injuries. The *Kaplan* court found that the injuries suffered by Dvora Chana Kaszemacher entitle her to compensation in the amount of $2,361,966.67. *Id*. at DE 65.

33. On July 13, 2008, a rocket launched by Hezbollah landed a few meters away from plaintiff Chaya Kaszemacher Alkareif, in Safed causing her psychological and emotional damage. As a result of this rocket attack, and her experience of being in Safed throughout the Hezbollah Rocket Attacks, Chaya Kaszemacher Alkareif suffered severe psychological and emotional damage. The *Kaplan* court found that the injuries suffered by Chaya Kaszemacher Alkareif entitle her to compensation in the amount of $2.25 million. *Id*. at DE 65.

34. Plaintiffs Avishai Reuvane and Elisheva Aron were living together in Safed in the summer of 2006. Several Hezbollah rockets fell on and severely damaged adjacent homes, terrorizing them. On July 13, 2006, a rocket fired by Hezbollah struck their home and knocked Avishai unconscious. The couple then fled Safed. As a result of these experiences Avishai Reuvane and Elisheva Aron suffered severe physical, psychological and emotional injuries. The *Kaplan* court found that the injuries suffered by Avishai Reuvane and Elisheva Aron entitle each of them to compensation in the amount of $1.5 million. *Id*. at DE 65.

35. On July 19, 2006 the art gallery owned by plaintiff Yair Mor in Safed was directly hit by a rocket launched by Hezbollah when he was on the premises. The business was completely destroyed. Rockets also fell near his home in nearby Rosh Pina, and Yair and his family were forced to flee the city for weeks. As a result of these events Yair Mor suffered severe psychological and emotional injuries. The *Kaplan* court found that the injuries suffered by Yair Mor entitle him to compensation in the amount of $850,000. *Id*. at DE 65.

36. In the summer of 2006, Mikimi Steinberg was living in a rooftop apartment in Safed. When the Hezbollah Rocket Attacks began she was terrified that, given the position of her apartment, she could easily be killed. She therefore fled her apartment for the duration of the attacks. In her absence the apartment was indeed struck and severely damaged by a rocket. Many of her possessions were also destroyed. These experiences caused Mikimi Steinberg severe emotional and psychological injury. The *Kaplan* court found that the injuries suffered by Mikimi Steinberg entitle her to compensation in the amount of $850,000. *Id*. at DE 65.

## CLAIM FOR RELIEF
## ON BEHALF OF ALL PLAINTIFFS
## <u>ACTION FOR INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333(a)</u>

37. The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

38. The actions of defendant Hezbollah constituted "acts of international terrorism" as defined in 18 U.S.C. § 2331.

39. As required by § 2331, the actions of defendant Hezbollah constituted a violation of numerous criminal laws of the United States including, without limitation, the criminal provisions of 18 U.S.C. §§ 2332(c)(2) and 2332f.

40. As required by § 2331, Hezbollah's actions were violent and dangerous to human life by their nature and as evidenced by their consequences. At least 43 Israeli civilians were murdered by the Hezbollah Rocket Attacks.

41. As required by § 2331, Hezbollah's actions transcended national boundaries in terms of the means by which they were accomplished, the persons they appeared intended to intimidate or coerce, and the locales in which Hezbollah operates.

42. As required by § 2331(1)(B) Hezbollah's actions were "intended ... to intimidate or coerce a civilian population [or] to influence the policy of a government by intimidation or coercion," in that, since its founding and until July 12, 2006 (and until the present day), Hezbollah has used terrorism against American and Israeli targets in an effort to coerce, intimidate and influence the American and Israeli government and public, and thereby weaken and undermine the United States and bring about the ultimate destruction of the State of Israel and the murder or expulsion of the Jews in Israel.

43. The actions of defendant Hezbollah described herein therefore constitute "acts of international terrorism" as defined in 18 U.S.C. §§ 2331 and 2333.

44. As a direct and proximate result of Hezbollah's conduct the plaintiffs suffered the injuries and harm described herein.

45. Defendant Hezbollah is therefore liable for all of plaintiffs' damages in such sums as may hereinafter be determined, to be trebled pursuant to 18 U.S.C. § 2333(a).

46. The conduct of Hezbollah was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiffs pray that this Court:

(a) Enter judgment against the defendant in favor of the plaintiffs for compensatory damages in an amount to be determined at trial, but for no less than $50 million, to be trebled pursuant to 18 U.S.C. § 2333;

(b) Enter judgment against the defendant in favor of the plaintiffs for punitive damages in an amount to be determined at trial;

(c) Enter judgment against defendant in favor of the plaintiffs for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d) Grant such other and further relief as justice requires.

Dated: Brooklyn, New York
December 31, 2018

        Yours,

        THE BERKMAN LAW OFFICE, LLC
        *Attorneys for the Plaintiffs*

    by: _____
        Robert J. Tolchin

    111 Livingston Street, Suite 1928
    Brooklyn, New York 11201
    (718) 855-3627