UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
MALKA KUMER; CHANA LIBA KUMER; and
MIRIAM ALMACKIES,

                            Plaintiffs,

                  -against-

HEZBOLLAH
(a/k/a Hizbullah, Hezballah, Hizballah),

                           Defendant.
------------------------------------------------------------------ X

Case No. 18-cv-7449-CBA-TAM

**AMENDED COMPLAINT**

Jury trial demanded

Plaintiffs, complaining of the Defendant, by their attorneys, The Berkman Law Office, LLC, allege for their Amended Complaint as follows:

## **INTRODUCTION**

1. This is an action pursuant to the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333, brought by American citizens harmed by and as the result of rockets and missiles fired by the Hezbollah terrorist organization at civilians in Israel, in the summer of 2006.

## **JURISDICTION**

2. This Court has subject-matter jurisdiction over this action pursuant to 18 U.S.C. § 2333 and 28 U.S.C. § 1331.

3. This Court has specific personal jurisdiction over Hezbollah because Hezbollah's conduct in this case was aimed at harming the United States, was intended by Hezbollah to harm the United States, and did in fact cause harm to the United States. As discussed below, Hezbollah carries out terrorist attacks against the United States in order to (also) harm Israel (and other U.S. allies) and carries out terrorist attacks against Israel in order to (also) harm the United States.

1

4. This Court also has specific personal jurisdiction over Hezbollah because in the years prior to the 2006 rocket and missile attacks, Hezbollah carried out extensive activities in and/or directed at the United States, including New York State, which were related to the terrorist rocket and missile attacks which gave rise to this action.

5. This Court also has personal jurisdiction over Hezbollah because in the years prior to the 2006 rocket and missile attacks, Hezbollah's co-conspirators transferred tens of millions of dollars through the U.S. and New York State banking system, which funds Hezbollah intend to and did in fact use to carry out the attacks.

## THE PARTIES

6. The plaintiffs are U.S. citizens who were harmed by or as the result of rocket and missile attacks on northern Israel carried out by defendant Hezbollah between July 12 and August 14, 2006. The details of the attacks and of plaintiffs' harm are set forth below.

7. The plaintiffs are all American citizens and civilians, who were harmed by the terrorist rocket attacks.

8. Defendant Hezbollah is a terrorist organization headquartered in Lebanon and is a "person" within the meaning of 18 U.S.C. § 2331.

## STATEMENT OF FACTS

### Hezbollah

9. Hezbollah was established in Lebanon circa 1982.

10. At all times Hezbollah is and was a radical Islamic terrorist organization which views the State of Israel, the United States and other Western countries as its enemies.

11. Since its founding and until July 12, 2006 (and until the present day), Hezbollah has been and remains, as a matter of official policy, extremely hostile to the United States and to its closest ally in the Middle East, the State of Israel.

12. Since its founding and until July 12, 2006 (and until the present day), it has been the continuous and official policy and goal of Hezbollah:

    a. To weaken, harm and undermine the United States and its allies militarily, economically and politically;

    b. To bring about and cause the eradication of the State of Israel, the closest ally of the United States in the Middle East, and its replacement with an Islamic state; and

    c. To bring about and cause the murder and/or expulsion of the Jewish residents of the State of Israel.

13. Because Israel is the closest ally of the United States in the Middle East, Hezbollah seeks to eradicate Israel and to cause the murder and/or expulsion of Israel's Jewish residents, both as a goal in its own right, and in order to weaken, harm and undermine the United States.

14. Since its founding until July 12, 2006 (and until the present day), it has been the continuous and official policy of Hezbollah to use terrorism (a) to intimidate and influence the United States government and public and thereby to weaken, harm and undermine the United States and its allies (including Israel) militarily, economically and politically and (b) to intimidate and influence the Israeli government and public and thereby to bring about the eventual eradication of the State of Israel and its replacement with an Islamic state and the murder and/or expulsion of the Jewish residents of the State of Israel.

15. Since its founding until July 12, 2006 (and until the present day), Hezbollah has carried out thousands of terrorist attacks against American and Israeli targets, in which hundreds of innocent victims have been murdered and thousands more maimed.

16. At all times Hezbollah sought, as an official and publicly-stated policy and goal of Hezbollah, to destroy the State of Israel and murder or expel its Jewish residents.

17. At all times Hezbollah sought, as an official and publicly-stated policy and goal of Hezbollah, to ethnically cleanse the territory of the State of Israel of its Jewish population.

18. Since its founding and until July 12, 2006 (and until the present day), Hezbollah has sought to achieve its goal of destroying the State of Israel and murdering or expelling its Jewish residents through the use of terrorist attacks on Jewish civilians in Israel and elsewhere.

19. Since its founding and until July 12, 2006 (and until the present day), Hezbollah carried out hundreds of terrorist attacks against Jewish civilians in Israel and elsewhere, which have killed hundreds of innocent civilians and wounded hundreds more.

20. Since its founding and until July 12, 2006 (and until the present day), Hezbollah has carried out hundreds of terrorist attacks against American targets which have killed hundreds of U.S. citizens and wounded hundreds more.

21. The terrorist attacks committed by Hezbollah between 1982 and July 12, 2006, included, inter alia, the following:

   a. The July 19, 1982, kidnapping of American University president David S. Dodge in Beirut.

   b. The April 18, 1983, car bomb attack on the United States Embassy in Beirut in which 63 people were killed.

c. The October 23, 1983, truck bomb attack on the U.S. Marine barracks in Beirut in which 241 American military personnel were killed.

d. The September 20, 1984, car bomb attack on the U.S. Embassy annex in Beirut in which two Americans and 22 others were killed.

e. The March 16, 1984, kidnapping and murder of William Buckley, a CIA operative working at the U.S. Embassy in Beirut.

f. The April 12, 1984, attack on a restaurant near the U.S. Air Force Base in Torrejon, Spain in which eighteen U.S. servicemen were killed and 83 people injured.

g. The December 4, 1984, terrorist hijacking of a Kuwait Airlines plane in which four passengers were murdered, including two Americans.

h. The June 14, 1985, hijacking of TWA Flight 847 in which Robert Stethem, a U.S. Navy diver, was murdered. Other American passengers were held hostage before being released on June 30, 1985.

i. The February 17, 1988, kidnapping and subsequent murder of U.S. Marine Col. William Higgins.

j. The March 17, 1992, bombing of the Israeli Embassy in Buenos Aires that killed 29 people and injured over 200.

k. The July 18, 1994, bombing of the Jewish community center in Buenos Aires that killed 86 people and injured over 200.

l. The November 28, 1995, bombardment of towns in northern Israel with missiles aimed at Jewish civilians.

m. The March 30, 1996, bombardment of northern Israeli towns with 28 missiles. A week later, Hezbollah fired 16 additional missiles, injuring 36 Israelis.

n. The August 19, 1997, bombardment of northern Israel with dozens of missiles aimed at Jewish civilians.

o. The December 28, 1998, bombardment on northern Israel with dozens of missiles aimed at Jewish civilians.

p. The May 17, 1999 bombardment on northern Israel with dozens of missiles aimed at Jewish civilians.

q. The June 24, 1999, bombardment on northern Israel, killing 2 people.

r. The April 9, 2002, launching of missiles into northern Israeli towns.

s. The August 10, 2003, firing of shells that killed a 16-year-old Israeli boy and wound other Israelis.

22. Hezbollah views its terrorist attacks against the United States and Israel as part and parcel of single war against allied enemies; in other words, Hezbollah intends its attacks against the United States to also harm Israel (and other U.S. allies) and intends its attacks against Israel to also harm the United States.

23. Hezbollah has been designated by the United States Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

**The Hezbollah Rocket Attacks**

24. Between July 12, 2006 and August 14, 2006, Hezbollah fired thousands of rockets and missiles at civilians in northern Israel (collectively hereinafter: "Hezbollah Rocket Attacks").

25. The plaintiffs were injured by the Hezbollah Rocket Attacks, as detailed below.

26. In the summer of 2006, plaintiff Malka Kumer was a 6-year-old living with her family in the small town of Safed, in the Upper Galilee region of Israel. During that summer she experienced hundreds of terrifying warning sirens followed by rocket strikes and explosions in, or within hearing distance of, Safed. She experienced and vividly recalls that summer as being spent running back and forth between the family home and a bomb shelter, always waiting in terror for the next attack. Those events severely and permanently traumatized Malka, and led directly to serious emotional problems that have afflicted her and disrupted her life ever since. The Hezbollah Rocket Attacks caused Malka severe and lasting psychological and emotional harm.

27. Plaintiff Chana Liba Kumer, Malka's sister, was a 5-year-old living in Safed with her family in the summer of 2006. She, too, experienced and clearly recalls the sirens and explosions throughout July and August and repeatedly racing to the bomb shelter along with crowds of panicked neighbors. She asked her mother who was firing the rockets and why they wanted to kill her, when she hadn't done anything to them; she remembers her mother telling her that it was "Hezbollah," but being unable or unwilling to explain further. She experienced her friends and their families leaving Safed for safer places after the rockets started falling, but her family being forced to stay behind, financially unable to leave, and simply praying for protection. She experienced being unable to go outside and play, staying indoors, at home or in a shelter, for over month, and hearing the chilling sounds of the warning sirens and the detonation of rockets. Chana Liba remembers not sleeping in her own room and bed during that period, as the family slept together on mattresses in the safest part of the apartment; and that when the attacks came during Shabbat meals, the entire family huddled together under the dining-room table for protection. All those experiences severely and permanently traumatized her. The Hezbollah Rocket Attacks caused Chana Liba Kumer severe and lasting psychological and emotional harm.

28. In the summer of 2006, plaintiff Miriam Almackies was an 18-year-old living in Safed with her three-month-old infant son. Her husband, an Israeli citizen, was forced to be away from home during the Hezbollah Rocket Attacks, having been called up to perform military service. Alone with her baby for the duration of the attacks, the 18-year-old Miriam lived in constant terror of death or serious physical injury both for her infant and herself. As a result of the Hezbollah Rocket Attacks, Miriam Almackies experienced horrific trauma, and suffered severe psychological and emotional injuries.

## CLAIM FOR RELIEF
## ON BEHALF OF ALL PLAINTIFFS
## ACTION FOR INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333(a)

29. The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

30. The actions of defendant Hezbollah constituted "acts of international terrorism" as defined in 18 U.S.C. § 2331.

31. As required by § 2331, the actions of defendant Hezbollah constituted a violation of numerous criminal laws of the United States including, without limitation, the criminal provisions of 18 U.S.C. §§ 2332(c)(2) and 2332f.

32. As required by § 2331, Hezbollah's actions were violent and dangerous to human life by their nature and as evidenced by their consequences. At least 43 civilians, including at least one American citizen, were murdered by the Hezbollah Rocket Attacks.

33. As required by § 2331, Hezbollah's actions transcended national boundaries in terms of the means by which they were accomplished, the persons they appeared intended to intimidate or coerce, and the locales in which Hezbollah operates.

34. As required by § 2331(1)(B) Hezbollah's actions were "intended ... to intimidate or coerce a civilian population [or] to influence the policy of a government by intimidation or coercion," in that, since its founding and until July 12, 2006 (and until the present day), Hezbollah has used terrorism against American and Israeli targets in an effort to coerce, intimidate and influence the American and Israeli government and public, and thereby weaken and undermine the United States and bring about the ultimate destruction of the State of Israel and the murder or expulsion of the Jews in Israel.

35. The actions of defendant Hezbollah described herein therefore constitute "acts of international terrorism" as defined in 18 U.S.C. §§ 2331 and 2333.

36. As a direct and proximate result of Hezbollah's conduct the plaintiffs suffered the injuries and harm described herein.

37. Defendant Hezbollah is therefore liable for all of plaintiffs' damages in such sums as may hereinafter be determined, to be trebled pursuant to 18 U.S.C. § 2333(a).

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray that this Court:

(a) Enter judgment against the defendant, in favor of the plaintiffs, for compensatory damages in an amount to be determined at trial, to be trebled pursuant to 18 U.S.C. § 2333;

(b) Enter judgment against the defendant in favor of the plaintiffs for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(c) Grant such other and further relief as justice requires.

Dated:   Brooklyn, New York
         October 28, 2022

                                          Yours,

                                          THE BERKMAN LAW OFFICE, LLC
                                          *Attorneys for the Plaintiffs*

                                          by: _____
                                                 Robert J. Tolchin

                                          829 East 15th Street
                                          Brooklyn, New York 11230
                                          (718) 855-3627