UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
MALKA KUMER; CHANA LIBA
KUMER; and MIRIAM ALMACKIES,

                Plaintiffs,

   -against-

HEZBOLLAH
(a/k/a Hizbullah, Hezballah, Hizballah),

                Defendant.
-----------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**
18-CV-7449 (CBA) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

    Plaintiffs are American citizens who, in 2006, were harmed by rocket and missile attacks on civilians in Israel, allegedly fired by the Hezbollah terrorist organization. (Amended Complaint ("Am. Compl."), ECF No. 21, ¶¶ 1, 6.) Plaintiffs' amended complaint alleges violations of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, related to the rocket attacks. (*Id.* ¶ 1.) Currently before the Court is Plaintiffs' second motion for service, by which Plaintiffs move for leave to effect substitute service on Defendant Hezbollah by international courier delivery (such as Federal Express, DHL, or UPS) to at least one of three Hezbollah entities: Al Manar (Hezbollah's television station), Al Nour (Hezbollah's radio station),[1] or the Lebanese Media Group (controlled by Hezbollah), pursuant to Fed. R. Civ. P. 4(f)(3). (Second Mot. for Service, ECF No. 24.) For the reasons discussed below, the Court grants Plaintiffs' motion to effect substitute service.

---

[1] While the spelling and capitalization of these entities may vary within Plaintiffs' filings, the Court uses "Al Manar" and "Al Nour" for consistency, unless within a quotation.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs filed the complaint on December 31, 2018, followed by an amended complaint on October 28, 2022. (Complaint ("Compl."), ECF No. 1; Am. Compl., ECF No. 21.) In a status report dated April 1, 2019, Plaintiffs noted their "difficulty [in] locating an address at which they will be able to serve process on Hezbollah in a conventional manner," stating that, "if they cannot identify such an address soon, they intend to file a motion for substitute service on Hezbollah pursuant to Fed. R. Civ. P. 4(f)(3)." (Apr. 1, 2019 Letter, ECF No. 5.) On April 2, 2019, the Honorable Carol Bagley Amon referred the request to the Honorable Roanne L. Mann, who thereafter permitted Plaintiffs to file a motion for substitute service by May 1, 2019. (Apr. 2, 2019 ECF Order Referring Application; Apr. 2, 2019 ECF Order.)

I. **Plaintiffs' First Motion for Alternate Service**

Plaintiffs filed their first motion for alternate service on May 10, 2019. (First Mot. for Service, ECF No. 6.) The motion requested permission to serve Hezbollah in the same manner that the court permitted in *Kaplan v. Hezbollah*, 715 F. Supp. 2d 165 (D.D.C. 2010).[2] In *Kaplan*, the plaintiffs attempted to serve Hezbollah by serving a minister in the Lebanese government who was allegedly a leader within Hezbollah, Mohammed Fneish. *Id.* at 166. The *Kaplan* plaintiffs argued that Hezbollah had been served (through Fneish) under Federal Rules of Civil Procedure 4(f)(2)(C)(ii) and 4(h)(2), but later

---

[2] As Judge Mann noted in her February 12, 2020 Memorandum and Order, another case filed by the same law firm was brought by many of the same plaintiffs who originally brought this case against the same defendant. *Kumer v. Hezbollah*, No. 18-CV-7449 (CBA) (RLM), 2020 WL 13572820, at *1 n.1 (E.D.N.Y. Feb. 12, 2020). That case, *Kaplan v. Hezbollah*, was initially filed in the United States District Court for the District of Columbia (No. 09-CV-646) and was then transferred to this Court (No. 19-CV-3187) in May 2019. (*See Kaplan v. Hezbollah*, No. 09-CV-646 (D.D.C.), May 14, 2019 ECF Orders, ECF Nos. 97, 98; *see also* First Mot. for Service, ECF No. 6 (describing the relationship with the *Kaplan* case).) As noted *infra* note 3, the complaint in this case has since been amended. (Am. Compl., ECF No. 21.)

2

conceded that "they could not base service of Hezbollah on Rule 4(f)(2)(C)(ii), which does not allow foreign service by mail if it is prohibited by the foreign country's law, because they could not state with certainty that service by DHL did not violate Lebanese law." *Id.* The plaintiffs then moved *nunc pro tunc* to serve Fneish via DHL under Rule 4(f)(3) and provided DHL tracking information that confirmed Fneish had received the package. *Id.* The *Kaplan* district court acknowledged that DHL confirmed that Fneish received the shipment, but then concluded that, because there was "no evidence that the defendants had received actual notice of the suit," the plaintiffs were not "authorized nunc pro tunc to serve Hezbollah by only serving Fneish by DHL." *Id.* at 167.

The *Kaplan* court then granted in part the plaintiffs' motion for an order pursuant to Fed. R. Civ. P. 4(f)(3), authorizing the plaintiffs to "complete service upon Hezbollah within 75 days by publishing full notice of the suit in the three Lebanese newspapers with the largest national circulation twice per week in each newspaper on a staggered schedule to cover six days each week for a period of four weeks." *Id.* at 167. After the plaintiffs' attempts to effectuate service by publication were unsuccessful, the court ordered the plaintiffs to show cause why the case should not be dismissed for failure to prosecute. *Kaplan v. Hezbollah*, No. 09-CV-646 (RCL) (D.D.C.), Order to Show Cause, ECF No. 20. The plaintiffs responded, noting their efforts and great difficulties in effectuating service through publication in Lebanese newspapers. *Kaplan v. Hezbollah*, No. 09-CV-646 (RCL) (D.D.C.), Response to Order of the Court, ECF No. 23, ¶¶ 6–9. On the same day, the *Kaplan* plaintiffs filed a motion for an order pursuant to Fed. R. Civ. P. 4(f)(3), requesting permission to serve Hezbollah through Hezbollah's television station, Al Manar. *Kaplan v. Hezbollah*, No. 09-CV-646 (RCL) (D.D.C.), Mot. for an Order Pursuant to Fed. R. Civ. P. 4(f)(3), ECF No. 22. The court subsequently granted the

3

plaintiffs' request, adding a *sua sponte* directive that the plaintiffs also serve Al Nour and the Lebanese Media Group by international courier. *Kaplan v. Hezbollah*, No. 09-CV-646 (RCL) (D.D.C.), Nov. 29, 2010 ECF Minute Order ("Plaintiffs are authorized to complete service upon Hezbollah within 45 days by serving al Manar television, al Nour radio, and the Lebanese Media Group each by international courier delivery.").

In their first motion, Plaintiffs in this case similarly sought to serve Hezbollah by international courier service delivery to Al Manar television, Al Nour radio, and the Lebanese Media Group. (First Mot. for Service, ECF No. 6, at 3.) In support of the motion, Plaintiffs submitted two exhibits: first, "an Affidavit executed by federal investigator Charles Villani, which was submitted to the SDNY in the matter of *U.S. v. Iqbal*, 06-CR-01054-RMB (S.D.N.Y.)," which described "Al Manar's role as Hezbollah's television station;" and second, "the superseding indictment filed in *Iqbal*, which charged the defendants with illegally providing services to Hezbollah by re-broadcasting al Manar programs" and "repeatedly confirms that Al Manar is Hezbollah's television station." (*Id.*; *see* Ex. A – Affidavit, ECF No. 6-1; Ex. B – Indictment, ECF No. 6-2.) The affidavit was dated August 22, 2006, and the indictment was dated June 20, 2007. (*See* Ex. A – Affidavit, ECF No. 6-1; Ex. B – Indictment, ECF No. 6-2.)

On February 12, 2020, Judge Mann denied Plaintiffs' first motion, without prejudice. *Kumer v. Hezbollah*, No. 18-CV-7449 (CBA) (RLM), 2020 WL 13572820 (E.D.N.Y. Feb. 12, 2020). In her ruling, Judge Mann observed that Plaintiffs had omitted relevant discussion of the procedural history and evidence in *Kaplan*, namely, that the *Kaplan* plaintiffs first attempted service on Fneish, the D.C. District Court then ordered the plaintiffs to publish notice in three Lebanese newspapers, and, only after that effort failed, the *Kaplan* court permitted the plaintiffs to serve Al Manar, including the

4

directive that the plaintiffs were also required to serve Al Nour radio and the Lebanese Media Group. *Id.* at *3 (citing *Kaplan v. Hezbollah*, No. 09-CV-646 (RCL) (D.D.C.), Nov. 29, 2010 ECF Minute Order). Judge Mann also found that "Plaintiffs proffer[ed] no evidence that the methods of service initially attempted by the plaintiffs in *Kaplan* nearly a decade ago" (that is, the attempted service via publication in Lebanese newspapers) "remain unviable, nor [did] they make any showing to suggest that service in the manner approved by [the *Kaplan* court]" (namely, effectuating substitute service by serving Al Manar, Al Nour, and the Lebanese Media Group) "is still feasible." *Kumer v. Hezbollah*, 2020 WL 13572820, at *3 (footnote omitted). Judge Mann highlighted the "staleness of the information relied upon in support of plaintiffs' letter-motion," particularly as to the 2006 affidavit and the 2007 indictment. *Id.* Accordingly, Judge Mann found that Plaintiffs had neither demonstrated that service through publication in a Lebanese newspaper was a fruitless venture, nor that service of Hezbollah through Al Manar television, Al Nour radio, and the Lebanese Media Group was still feasible, given the age of the information relied upon and the age of the *Kaplan* case. *Id.*

## II. Plaintiffs' Second Motion for Alternate Service

On December 15, 2022, Plaintiffs filed their second motion for service.[3] (*See* Second Mot. for Service, ECF No. 24.) To address the deficiencies in their prior motion, Plaintiffs attached a declaration of Lieutenant Colonel (Ret.) Sarit Zehavi, president and founder of the Alma Center, "a nonprofit, independent research and education center

---

[3] Prior to filing their second motion for alternate service, Plaintiffs filed their amended complaint. (Am. Compl., ECF No. 21.) In addition, Plaintiffs filed a letter requesting permission to effect service on an individual associated with Hezbollah and held in the Metropolitan Correctional Center at the time, Alexei Hassan Saab. (*See* Pls.' Sept. 10, 2020 Letter, ECF No. 15; Sept. 11, 2020 ECF Order; Pls.' Sept. 16, 2020 Letter, ECF No. 16.) The application was denied without prejudice. (*See* Mem. and Order, ECF No. 17.)

5

. . . which specializes in security issues and challenges relating to Lebanon and Syria, with a strong focus on Hezbollah." (Zehavi Decl., ECF No. 24-1, ¶ 1.) Lt. Col. Zehavi has an M.A. degree in Middle East Studies from Ben-Gurion University, experience as an intelligence officer and analyst in the Israeli Defense Forces, and she has written and spoken on Hezbollah through research studies, analyses, and lectures. (Zehavi Decl., ECF No. 24-1, ¶¶ 2–4.) Lt. Col. Zehavi's declaration is dated December 14, 2022. (*Id.*)

## DISCUSSION

### I. Legal Standards

Federal Rule of Civil Procedure 4 governs service of process. Rule 4(h) sets forth the process for serving a partnership, domestic or foreign corporation, or other unincorporated association,[4] and Rule 4(h)(2) states that, when serving such an entity abroad, service shall occur "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Turning to Rule 4(f), an individual "may be served at a place not within any judicial district of the United States," by, *inter alia*, "other means not prohibited by international agreement, as the court orders." While "'[t]he decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court,'" a district court "may require the parties 'to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary.'" *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd.*

---

[4] "'An unincorporated association is defined as a body of persons acting together and using certain methods for prosecuting a special purpose or common enterprise.'" *Ests. of Ungar ex rel. Strachman v. Palestinian Auth.*, 304 F. Supp. 2d 232, 258 (D.R.I. 2004) (quoting *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 485 (1st Cir. 1985)). As Judge Mann analyzed the prior request for alternate service based upon the rules governing unincorporated associations, so too does this Court. *See Kumer v. Hezbollah*, No. 18-CV-7449 (CBA) (RLM), 2020 WL 13572820, at *1 (E.D.N.Y. Feb. 12, 2020).

*Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (quoting first *RSM Prod. Corp. v. Fridman*, No. 06-CV-11512, 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007), and then *Export-Import Bank v. Asia Pulp & Paper Co.*, No. 03-CV-8554, 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005)). Service of process by other means under Rule 4(f)(3) "'is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant.'" *SocketWorks Ltd. Nigeria*, 265 F.R.D. at 115 (quoting *KPN B.V. v. Corcyra D.O.O.*, No. 08-CV-1549, 2009 WL 690119, at *1 (S.D.N.Y. Mar. 16, 2009)). In fact, "[g]enerally, there is no hierarchy among the subsections in Rule 4(f)." *Advanced Aerofoil Techs., AG v. Todaro*, No. 11-CV-9505 (ALC) (DCF), 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012). "Service pursuant to Rule 4(f)(3) must comply with constitutional notions of due process and constitute 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *S.E.C. v. Shehyn*, No. 04-CV-2003 (LAP), 2008 WL 6150322, at *3 (S.D.N.Y. Nov. 26, 2008) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Service of process in ATA cases, often attempted on terrorist entities, can prove challenging. Across the United States, several courts have permitted alternate service in ATA cases against Hamas, a member of al Qaeda, the Taliban, and a bank accused of providing financial services to Nusra Front, a terrorist organization. *See, e.g., Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 88 (D.D.C. 2006); *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1327 (D. Utah 2006); *Strange v. Islamic Republic of Iran*, No. 14-CV-435 (CKK), 2016 WL 10770678, at *8 (D.D.C. May 6, 2016); *Schrier v. Qatar Islamic Bank*, No. 20-CV-60075, _ F. Supp. 3d _, 2022 WL 4598630, at *10 (S.D. Fla. Sept. 30, 2022).

7

## II. Analysis

### A. Updated Information as to Hezbollah's Connection with Al Manar, Al Nour, and the Lebanese Media Group

As noted above, Plaintiffs' second motion includes a declaration from an expert on Hezbollah. (Second Mot. for Service, ECF No. 24, at 2; Zehavi Decl., ECF No. 24-1.) Plaintiffs state that they asked Lt. Col. Zehavi to (1) "address whether there has been any change in the status of Al Manar, Al Nour and the Lebanese Media Group, or in their connection to Hezbollah, since 2006," (2) "specifically examine the documents relied upon by the *Kaplan* court (*i.e.,* the Villani affidavit and the superseding indictment in *Iqbal*," and (3) address "whether, in her professional opinion, legal papers for Hezbollah that are delivered to Al Manar, Al Nour or the Lebanese Media Group, would likely reach Hezbollah's top officials." (Second Mot. for Service, ECF No. 24, at 2.)

In her affidavit, Lt. Col. Zehavi stated, in pertinent part, that "[t]here has been no change in the status of Al Manar, Al Nour or the Lebanese Media Group, or in their connections with Hezbollah, since 2006. All three of these entities remain wholly controlled by Hezbollah, just as they were in 2006." (Zehavi Decl., ECF No. 24-1, ¶ 8 (emphasis omitted).) Lt. Col. Zehavi also stated that, "in my professional opinion, it is highly likely and very safe to assume that if legal papers addressed to Hezbollah are delivered to the offices of Al Manar, Al Nour or the Lebanese Media Group, those papers will be delivered through the chain of command to Hezbollah's top officials." (*Id.* ¶ 9.)

In light of the goal of effecting service that will "'apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,'" and Plaintiffs' adequate (and sufficiently recent) evidence that service on such entities

would notify Hezbollah leadership of the instant proceedings, the Court concludes that service of Defendant Hezbollah through substitute service on Al Manar, Al Nour, and the Lebanese Media Group is reasonably calculated to result in adequate notice. *Shehyn*, 2008 WL 6150322, at *3 (quoting *Mullane,* 339 U.S. at 314).

### B. Feasibility of Service Through Publication in a Lebanese Newspaper

Plaintiffs also asked Lt. Col. Zehavi "to address whether, given the current state of affairs in Lebanon, it might be possible to publish notice of this suit in a Lebanese newspaper." (Second Mot. for Service, ECF No. 24, at 2.) Lt. Col. Zehavi opined that service in this manner would be functionally impossible:

> Virtually all Lebanese newspapers (even those that are not frankly pro-Hezbollah) are hostile to Israel, and would consider publication of such a notice, and any cooperation with the plaintiffs in this case (Jews residing in Israel), as completely unacceptable, if not treasonous. Even those very few Lebanese newspapers not ideologically hostile to Israel would refuse to publish such a notice, out of concern that they would be publicly viewed, and condemned, as "collaborators" with Israel.

(Zehavi Decl., ECF No. 24-1, ¶ 11.) The Court concludes that Plaintiffs have sufficiently demonstrated that it would not be feasible for Plaintiffs to attempt service through publication in Lebanese newspapers.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion to effect substitute service on Defendant Hezbollah pursuant to Fed. R. Civ. P. 4(f)(3). Plaintiffs are authorized to complete service upon Hezbollah within 45 days of this Order by serving all three Hezbollah affiliated-entities (Al Manar television, Al Nour radio, and the

Lebanese Media Group), each by international courier delivery (such as Federal Express, DHL, or UPS).[5]

**SO ORDERED.**

Dated:  Brooklyn, New York
           June 7, 2023

                                                */s/ Taryn A. Merkl*
                                                TARYN A. MERKL
                                                UNITED STATES MAGISTRATE JUDGE

---

[5] The Court notes that Plaintiffs requested leave "to serve Hezbollah by international courier delivery (*e.g.* Federal Express, DHL or UPS) to Al Manar, Al Nour, **or** the Lebanese Media Group." (Second Mot. for Service, ECF No. 24, at 2 (bold emphasis added).) The Court, in its discretion, finds that substitute service would be best effectuated by having Plaintiffs serve all three entities.