UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
 --------------------------------------------------------------------X
MALKA KUMER; CHANA LIBA KUMER; and
MIRIAM ALMACKIES,

                                                     Case No. 18-cv-7449-CBA-TAM

                    Plaintiffs,

                -against-

HEZBOLLAH
(a/k/a Hizbullah, Hezballah, Hizballah),

                    Defendant.

 --------------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR ENTRY OF PARTIAL JUDGMENT BY Dkt.FAULT ON LIABILITY**

**INTRODUCTION**

Pursuant to the Court's orders of December 12, 2023 and January 26, 2024, plaintiffs Malka Kumer, Chana Liba Kumer and Miriam Almackies ("Plaintiffs") hereby move for entry of partial judgment by default finding that defendant Hezbollah is liable for Plaintiffs' injuries pursuant to the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333.

Plaintiffs further respectfully request that following entry of partial judgment on liability, they be directed to submit evidence of their damages, so that a final judgment can be entered.

**RELEVANT BACKGROUND**

This is a civil action for damages pursuant to the ATA against the Lebanon-based terrorist organization Hezbollah. The Plaintiffs are American citizens who were harmed in widespread rocket attacks carried out by Hezbollah against civilians in Israel during the summer of 2006.

The original complaint in this action (Dkt. 1) included the three Plaintiffs, as well as other plaintiffs who were also plaintiffs in a parallel action, *Kaplan v. Hezbollah*, 19-cv-03187 (BMC) (E.D.N.Y.) ("*Kaplan*"). The *Kaplan* plaintiffs, like the Plaintiffs here, are U.S. citizens who were harmed by Hezbollah's 2006 terrorist rocket campaign against civilians in Israel.

Judge Brian Cogan ordered entry of final judgment against Hezbollah in favor of the *Kaplan* plaintiffs on October 3, 2022. *See Kaplan*, WL 17772031, (E.D.N.Y. Sept. 16, 2022) (R&R recommending entry of default judgment against Hezbollah); *Kaplan*, 19-cv-03187, electronic order entered by Judge Cogan on 10/03/2022 ("the Court adopts the R&R as the decision of this Court on plaintiffs' motion for a default judgment for the same reasons as stated in the R&R.").

After entry of judgment in *Kaplan*, this Court ordered Plaintiffs to file an amended complaint. (Electronic order, 10/17/2022). An amended complaint was filed on October 28, 2022, which dropped the *Kaplan* plaintiffs, and left the three remaining Plaintiffs. (Dkt. 21).

Hezbollah was served with process in this action but failed to appear or defend. Therefore, on October 27, 2023, Hezbollah's default was entered pursuant to Fed. R. Civ. P. 55(a). (Dkt. 30).

## DISCUSSION

### A.      Liability

"On a motion for default judgment, the defendant is deemed to have admitted to all well-pleaded allegations of liability in the complaint. To be well-pleaded, the Court must find the Plaintiffs' factual allegations in their complaint, when accepted as true, establish liability as a matter of law." *Kaplan v. Hezbollah*, 2022 WL 17772031, at *1 (E.D.N.Y. Sept. 16, 2022) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992)). *Cf. Trustees of the Local 813 Ins. Tr. Fund v. A.A. Danzo Sanitation*, 2018 WL 4268907, at *3

2

(E.D.N.Y. Aug. 8, 2018), *R&R adopted*, 2018 WL 4266038 (E.D.N.Y. Sept. 5, 2018) ("a party's default is deemed as an admission of all well-pleaded allegations of liability.").

The allegations against Hezbollah in Plaintiffs' amended complaint are detailed, extensive and extremely well-pleaded and establish Hezbollah's liability under the ATA as a matter of law.

Section 2333 of the ATA provides:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).

As defined in the ATA, a "national of the United States" includes "a citizen of the United States." 18 U.S.C. § 2331(2). As reflected in their United States passports, the Plaintiffs are all citizens of the United States. (*See* Declaration of Robert J. Tolchin ("Tolchin"), Exhibit 1).

The ATA defines "international terrorism," as: "[A]ctivities that [ ] involve violent acts or acts dangerous to human life that are a violation of the laws of the United States or of any State, or that would be a criminal violation if committed within [their] jurisdiction[,] appear to be intended [ ] to intimidate or coerce a civilian population[,] to influence the policy of a government by intimidation or coercion[,] or to affect the conduct of a government by mass destruction[,] ... and occur primarily outside the territorial jurisdiction of the United States ..." 18 U.S.C. § 2331(1).

Plaintiffs' well-pled allegations satisfy all these elements. The rocket attacks from which Plaintiffs' action arises are clearly both "violent acts" and "acts dangerous to human life." *Cf. Kaplan*, 2022 WL 17772031, at *3 ("Firing rockets into civilian areas is certainly a violent act and it is also an act dangerous to human life … at least 43 Israeli civilians were killed in the Hezbollah rocket attacks in the summer of 2006. The Congressional Research Service in its report on

Hezbollah found that in 2006, 'Over the course of a 34-day period, Hezbollah launched more than 4,000 rockets into northern Israel killing 55 Israelis.") (cleaned up). A copy of that Congressional Research Service report on Hezbollah is attached hereto as Exhibit A.[1]

Likewise, Hezbollah's firing of the rockets that harmed that Plaintiffs constitued a violation of numerous criminal laws of the United States and of the several States (including, among many others, attempted murder and assault and battery), or would constitue such violations if committed within U.S. or state jurisdiction, as required by ATA § 2331(1). *Cf. Kaplan*, 2022 WL 17772031, at \*3 ("the rocket attacks would be violations of numerous state and federal laws if they occurred here, including but not limited to attempted murder and 18 U.S.C. § 2332f.").

The Plaintiffs allege in detail that Hezbollah carried out the rocket attacks in order to coerce, intimidate and influence the American and Israeli government and public, and thereby weaken and undermine the United States and bring about the ultimate destruction of the State of Israel and the murder or expulsion of the Jews in Israel. (Dkt. 21 at ¶¶ 9-22). These allegations satisfy the ATA's requirement that the acts "appear to be intended [ ] to intimidate or coerce a civilian population[,] to influence the policy of a government by intimidation or coercion[,] or to affect the conduct of a government by mass destruction." 18 U.S.C. § 2331(1). *Cf. Kaplan*, 2022 WL 17772031, at \*3 ("Plaintiffs have also sufficiently alleged these attacks were carried out by Hezbollah with the intent to intimidate or coerce the Israeli civilian population and affect the conduct of the government of Israel by mass destruction.").

Additionally, the rocket attacks obviously "occur[ed] primarily outside the territorial jurisdiction of the United States." ATA § 2331(1).

---

[1] Also available at https://crsreports.congress.gov/product/pdf/IF/IF10703.

Finally, Plaintiffs have also clearly and sufficiently pled that they were "injured in [their] person[s] by reason" of Hezbollah's rockets. (Dkt. 21 at ¶¶ 24-28). It is well-established the ATA permits recovery for non-physical injuries. *Cf. Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 426 (E.D.N.Y. 2009); *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 589 (E.D.N.Y. 2005); *Biton v. Palestinian Interim Self–Gov't Auth.,* 310 F.Supp.2d 172, 181–82 (D.D.C. 2004).

Thus, all the elements of ATA § 2333 are satisfied and Hezbollah's liability is established.

**B.**     <u>**Subject-Matter Jurisdiction**</u>

Needless to say, the Court must also ensure that it has subject matter before entering default judgment.

This Court unquestionably has subject-matter jurisdiction over this action. Because Plaintiffs' claims against Hezbollah are brought under a federal cause of action, *i.e.*, the ATA, 18 U.S.C. § 2333, this Court has original subject-matter jurisdiction under 28 U.S.C. § 1331.

**C.**     <u>**Personal Jurisdiction**</u>

For the reasons below, this Court has personal jurisdiction over Hezbollah.

    *a. The Proceedings in Kaplan Regarding Personal Jurisdiction*

In *Kaplan*, the plaintiffs moved for entry of default judgment against Hezbollah, and asserted personal jurisdiction over Hezbollah under the conspiracy theory of personal jurisdiction. That motion was referred to a magistrate judge, who issued a report and recommendation in which he rejected the *Kaplan* plaintiffs' conspiracy jurisdiction argument, and recommended that their motion for final default judgment be denied for lack of personal jurisdiction. *Kaplan v. Hezbollah*, 2022 WL 2467084 (E.D.N.Y. Feb. 28, 2022).

The *Kaplan* plaintiffs filed objections to the report and recommendation, following which Judge Brian Cogan issued a decision rejecting the report and recommendation. *Kaplan v.*

*Hezbollah*, 2022 WL 2207263 (E.D.N.Y. June 21, 2022). In that decision, Judge Cogan found that

in this Circuit, a district court has discretion as to whether require a plaintiff to prove personal

jurisdiction where, as here, the defendant defaults. Judge Cogan then explained at length why, in

the circumstances of the *Kaplan* case – which are identical to the circumstances of this case – it

would be unfair and inappropriate to require the plaintiffs to show personal jurisdiction over

Hezbollah. *Kaplan v. Hezbollah*, 2022 WL 2207263 at *2-4.

As discussed below, this Court should find that the Plaintiffs should not be required to

demonstrate personal jurisdiction over Hezbollah for the reasons adduced by Judge Cogan;

additionally or alternatively, the Court should find that it may exercise personal jurisdiction over

Hezbollah under the "conspiracy theory" of personal jurisdiction.

### b.   *Judge Cogan's Holding Should Be Adopted by This Court*

As noted above, the Plaintiffs in this case and the *Kaplan* plaintiffs are identically-situated,

and this action is identical in every respect to *Kaplan*, both substantively and in terms of its

procedural posture. Indeed, the allegations against Hezbollah in the operative complaint in *Kaplan*,

where Hezbollah was found liable for the rocket attacks at issue here, are effectively identical to

those in the amended complaint here. (Tolchin, Exhibit 2).[2]

Accordingly, for the reasons detailed by Judge Cogan in his June 21, 2022, decision, which

are incorporated herein by reference, and to avoid the inequity of applying different standards to

identically-situated plaintiffs, this Court should find that Plaintiffs here, too, need not show

personal jurisdiction over Hezbollah.

---

[2] The *Kaplan* complaint also contains allegations against North Korea, which are irrelevant here.

    *c.*   *The Court Has Conspiracy Jurisdiction Over Hezbollah*

Additionally or alternatively, the Court may exercise personal jurisdiction over Hezbollah under the "conspiracy theory" of personal jurisdiction" recognized by the Second Circuit in *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018). *Schwab* held that in order to establish "conspiracy" jurisdiction, the plaintiff must show that "(1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Id*.

These elements are present here:

The Hezbollah rocket and missile attacks that injured the plaintiffs were part and parcel of the campaign of brutal terrorist violence waged by Hezbollah against both the State of Israel and the United States for nearly 40 years, which has resulted in the murder of hundreds of American and Israel citizens, and the maiming of thousands more. (*See* Dkt. 21 at ¶¶ 9-22; Declaration of Dr. Guy Podoler (Tolchin, Exhibit 3) at ¶ 26); Declaration of Professor Barry Rubin (Tolchin, Exhibit 4) at ¶ 25; Exhibit A (discussing history of Hezbollah attacks on the United States and Israel).

Hezbollah's on-going terrorist campaign, pursuant to which the plaintiffs were harmed, clearly constitutes a criminal conspiracy among the participants therein. Indeed, Hezbollah itself constitutes, as an organization, a criminal conspiracy. A conspiracy is constituted by "an agreement to commit an unlawful act" or "a partnership in criminal purposes." *Bahlul v. U.S.*, 840 F.3d 757, 800 (D.C. Cir. 2016) (Wilkins, *C.J.*, concurring) (quotation marks omitted); *U.S. v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001) (citation omitted). The federal courts have therefore repeatedly held that organizations that regularly engage in crime or violence as matter of policy or practice –such as terrorist groups and gangs – constitute conspiracies. Thus, in *Extradition of*

*Marzook*, 924 F. Supp. 565 (S.D.N.Y. 1996), the court held that Hamas itself – as an organization – constituted a conspiracy. *Id*. at 579-585 (finding "the conspiracy known as Hamas" responsible for various terrorist attacks). Similarly, in *U.S. v. Bingham*, 653 F.3d 983, 998 (9th Cir. 2011), the court found that the Aryan Brotherhood prison gang constituted, as an organization, a conspiracy. *See also U.S. v. Diaz*, 176 F.3d 52 (2d Cir. 1999) (finding that a "street gang known as the 'Latin Kings'" itself constituted a conspiracy); *U.S. v. Robinson*, 978 F.2d 1554, 1562–63 (10th Cir. 1992) (same regarding the Crips); *U.S. v. Rivera*, 292 F.Supp. 2d 827, 833 (E.D. Va. 2003) (same regarding the MS-13 gang); *Zelaya v. U.S.*, 2013 WL 4495788, at \*6 (D. Md. Aug. 20, 2013) (same).

One of Hezbollah's co-conspirators in the years prior to the attacks in which Plaintiffs were injured was Alexei Saab. According to a sworn complaint executed by FBI Special Agent Anthony J. Cipriano on July 8, 2019, and filed in *U.S. v. Saab*, 19-cr-676-PGG (S.D.N.Y.), Saab conducted extensive activities in furtherance of the Hezbollah terrorist conspiracy in New York and elsewhere in the U.S., commencing in 2000. (*See* Exhibit B at ¶¶ 2-4; ¶¶ 6-8; and ¶¶ 16-33).

Since Saab conducted his activities in furtherance of the Hezbollah conspiracy while physically present within the United States, his "overt acts in furtherance of the conspiracy" unquestionably "had sufficient contacts" to subject him to U.S. jurisdiction, as required by *Schwab*.[3]

Therefore, all the *Schwab* elements are satisfied, and Hezbollah is subject to personal jurisdiction in this action.

---

[3] Pursuant to Fed. R. Civ. P. 4(k)(2), the relevant forum for analyzing jurisdiction under the ATA is the United States as a whole. *Weinstock v. Abu Marzook*, 2019 WL 1470245, at \*2 (S.D. Fla. Apr. 3, 2019). *Cf. Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 86-90 (D.D.C. 2006) (same).

It is true that the magistrate judge in *Kaplan* issued a report and recommendation rejecting the same conspiracy jurisdiction argument as that asserted by the Plaintiffs above. *Kaplan*, 2022 WL 2467084 (E.D.N.Y. Feb. 28, 2022).

However, that report and recommendation was, respectfully, erroneous. The magistrate judge found – correctly, and just as the *Kaplan* plaintiffs and the Plaintiffs here argue – that "Hezbollah itself constitutes a terrorist conspiracy and that Mr. Saab's actions were in furtherance of that terrorist conspiracy … the criminal complaint clearly shows a conspiracy between Hezbollah and Saab, in which Hezbollah purposefully created minimum contacts with the United States by sending Saab here to perform reconnaissance." (*Id*. at *6).

The magistrate nonetheless found that personal jurisdiction is lacking because the *Kaplan* plaintiffs did not "demonstrate[] anywhere that the Hezbollah rocket attacks in Israel in July and August of 2006 which <u>actually injured</u> Plaintiffs <u>arose out of or related</u> to Saab's surveillance of U.S. landmarks as terror targets." (*Id*., emphasis added). According to the *Kaplan* R&R, a plaintiff asserting conspiracy jurisdiction must show "acts committed by the co-conspirator in the forum <u>in furtherance of the actual harm</u> the Plaintiffs suffered." (*Id*. at *5, emphasis added).

In other words, the magistrate in *Kaplan* found that the plaintiffs were required to show a <u>causal</u> link between Saab's activities in the United States, and the terrorist attacks in which they were injured.

But the causation requirement imposed by the magistrate judge was erroneous as a matter of law for at least two interrelated legal reasons:

First, the Second Circuit's decision in *Schwab* requires only that the co-conspirator's U.S.-based actions be taken <u>in furtherance of the conspiracy</u> with the foreign defendant. "[P]laintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3)

a co-conspirator's overt acts <u>in furtherance of the conspiracy</u> had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Schwab*, 883 F.3d at 87 (emphasis added).

Critically, *Schwab* did not require that plaintiffs show "acts committed by the co-conspirator in the forum <u>in furtherance of the actual harm</u> the Plaintiffs suffered," as the *Kaplan* R&R demanded. (*Kaplan*, 2022 WL 2467084 at *5, emphasis added). Rather, the plaintiff need only be harmed by actions taken in furtherance <u>of the conspiracy as a whole</u>, *Schwab*, 883 F.3d at 71 ("This case is one of dozens seeking to recover for harm allegedly resulting from a conspiracy"), irrespective of <u>which</u> of the conspirators performed the harmful actions or <u>where</u> they were performed.

After finding, correctly, that "Hezbollah itself constitutes a terrorist conspiracy and that Mr. Saab's actions were in furtherance of that terrorist conspiracy" (*Kaplan*, 2022 WL 2467084 at *6), the magistrate in *Kaplan* should have then proceeded to find that the court had personal jurisdiction over Hezbollah in an action brought by plaintiffs who were harmed by Hezbollah's terrorist conspiracy. Instead, the *Kaplan* R&R deviated from *Schwab*, and required the plaintiffs to show something more: namely, that the U.S. actions were taken "in furtherance of the actual harm the Plaintiffs suffered." (*Kaplan*, 2022 WL 2467084 at *5). Notably, the Second Circuit has reiterated the *Schwab* test, and reversed a district court decision that grafted an additional requirement onto the plain language of that test. *See Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 121-125 (2d Cir. 2021).

Second, and relatedly, the magistrate's finding in *Kaplan* that Due Process demands a causal link between Saab's U.S.-based activities and the attacks that harmed plaintiffs directly conflicts with the decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

10

In *Ford*, the Supreme Court clarified that the rule that a plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum" – which rule was invoked repeatedly in the *Kaplan* R&R – <u>does not require a causal link</u> between the defendant's forum contacts and the harm to the plaintiffs. (*Ford*, 141 S. Ct. at 1026-1032). Rather, to satisfy Due Process, "[t]he only issue is whether [the in-forum] contacts are related enough to the plaintiffs' suits." (*Id*. at 1031). That question of "relatedness" was answered affirmatively by the *Kaplan* R&R's finding that Saab's U.S. activities were in furtherance of the Hezbollah terrorist conspiracy which harmed the plaintiffs.

Therefore, this Court has personal jurisdiction over Hezbollah pursuant to the conspiracy theory of jurisdiction.

**WHEREFORE**, this motion should be granted.

Dated:   Brooklyn, New York
          February 28, 2024

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for Plaintiff*

by:                      
        Robert J. Tolchin

829 East 15th Street, Box 7
Brooklyn, New York 11230
718-855-3627