UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
MALKA KUMER, CHANA LIBA
KUMER, and MIRIAM ALMACKIES,

                 Plaintiffs,

    -against-

HEZBOLLAH,

                 Defendant.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
18-CV-7449 (CBA) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

    Plaintiffs Malka Kumer, Chana Liba Kumer, and Miriam Almackies are American citizens who allege violations of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, against Hezbollah, based on harms they suffered due to rocket and missile attacks on civilians in Israel committed by Hezbollah in 2006. (Am. Compl., ECF No. 21, ¶¶ 1, 6.) Currently before the Court is Plaintiffs' motion for a default judgment, by which Plaintiffs move for a partial default judgment to resolve questions of liability. (Notice of Mot., ECF No. 32.) For the reasons discussed below, the Court respectfully recommends that Plaintiffs' motion for a partial default judgment be granted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### I. Plaintiffs' Allegations

    Plaintiffs filed the complaint on December 31, 2018, followed by an amended complaint on October 28, 2022. (Compl., ECF No. 1; Am. Compl., ECF No. 21.) In the amended complaint, Plaintiffs discuss the history and purpose of the Hezbollah organization, alleging that Hezbollah's "official polic[ies] and goal[s]" include to (1) "weaken, harm[,] and undermine the United States and its allies militarily, economically, and politically"; (2) "bring about and cause the eradication of the State of

Israel"; and (3) "bring about and cause the murder and/or expulsion of the Jewish residents of the State of Israel." (Am. Compl., ECF No. 21, ¶ 12.) Plaintiffs list nearly 20 examples of "terrorist attacks committed by Hezbollah between 1982 and July 12, 2006," describing bombings, kidnappings, murders, and numerous missile attacks aimed at Israel and Jewish civilians. (*Id.* ¶ 21.)

Plaintiffs lived in Safed, Israel, in the summer of 2006. (*Id.* ¶¶ 26–28.) Plaintiffs allege that from July to August 2006, "Hezbollah fired thousands of rockets and missiles at civilians in northern Israel." (*Id.* ¶ 24.) Plaintiffs describe experiencing "hundreds of terrifying warning sirens followed by rocket strikes and explosions" in or near Safed; "running back and forth between the family home and a bomb shelter"; "being unable to go outside and play [because of the need to] stay[] indoors, at home or in a shelter, for over [a] month"; and "liv[ing] in constant terror of death or serious physical injury." (*Id.* ¶¶ 26–28.) Plaintiffs allege that they were severely traumatized by these events. (*Id.*)

## II. Procedural History

As noted above, Plaintiffs initiated this matter on December 31, 2018. (Compl., ECF No. 1.) On April 1, 2019, Plaintiffs filed a status report indicating that they were having "difficulty locating an address at which they will be able to serve process on Hezbollah in a conventional manner," and stating that, "if they cannot identify such an address soon, they intend to file a motion for substitute service on Hezbollah pursuant to Fed. R. Civ. P. 4(f)(3)." (Apr. 1, 2019 Letter, ECF No. 5.)

Plaintiffs filed their first motion for alternate service on May 10, 2019. (First Mot. for Service, ECF No. 6.) The motion requested permission to serve Hezbollah "by international courier delivery . . . to al Manar television, al Nour radio, and the Lebanese Media Group" — the same manner that the court permitted in *Kaplan v.*

*Hezbollah*, 715 F. Supp. 2d 165 (D.D.C. 2010).[1] (*Id.* at 3.) On February 12, 2020, the Honorable Roanne L. Mann denied Plaintiffs' first motion, without prejudice, noting that Plaintiffs did not address earlier service attempts[2] by the *Kaplan* plaintiffs or explain why those methods of service "remain unviable" nearly ten years later. *Kumer v. Hezbollah*, No. 18-CV-7449 (CBA) (RLM), 2020 WL 13572820, at *3–4 (E.D.N.Y. Feb. 12, 2020), ECF No. 7.

On December 15, 2022, Plaintiffs filed their second motion for alternate service, renewing their request to effectuate service via international courier delivery to Al Manar, Al Nour, or the Lebanese Media Group, with additional factual support in the form of a declaration from Lieutenant Colonel (Ret.) Sarit Zehavi, president and founder of the Alma Center, "a nonprofit, independent research and education center

---

[1] *Kaplan* is another case brought by many of the same plaintiffs who originally brought this case against the same defendant. *Kumer v. Hezbollah*, No. 18-CV-7449 (CBA) (RLM), 2020 WL 13572820, at *1 n.1 (E.D.N.Y. Feb. 12, 2020), ECF No. 7. *Kaplan* was initially filed in the United States District Court for the District of Columbia (Docket No. 09-CV-646) and was then transferred to this court (Docket No. 19-CV-3187) in May 2019. *See Kaplan v. Hezbollah*, No. 09-CV-646 (RCL) (D.D.C.), May 14, 2019 ECF Orders, ECF Nos. 97, 98.

[2] In *Kaplan*, the plaintiffs attempted to serve Hezbollah by serving a minister in the Lebanese government who was allegedly a leader within Hezbollah, Mohammed Fneish. 715 F. Supp. 2d at 166. The *Kaplan* court denied plaintiffs' motion for leave to serve Hezbollah *nunc pro tunc* by serving Fneish. *Id.* The court reasoned that plaintiffs had not put forth evidence that Fneish was "authorized to accept service on behalf of Hezbollah" and thus, "there was no evidence that the defendants had received actual notice of the suit." *Id.* at 167. The *Kaplan* court granted in part the plaintiffs' motion for an order pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure, authorizing the plaintiffs to "complete service upon Hezbollah within 75 days by publishing full notice of the suit in the three Lebanese newspapers with the largest national circulation twice per week in each newspaper on a staggered schedule to cover six days each week for a period of four weeks." *Id.* at 167. The *Kaplan* plaintiffs were ultimately unable to effectuate service through publication in Lebanese newspapers and filed a motion for leave to serve Hezbollah through Hezbollah's television station, Al Manar. *Kaplan*, No. 09-CV-646 (RCL), Pls.' Resp. to Order to Show Cause, ECF No. 23, ¶¶ 6–9; *Kaplan*, No. 09-CV-646 (RCL), Pls.' Mot. for Order Pursuant to Fed. R. Civ. P. 4(f)(3), ECF No. 22. The court granted the plaintiffs' request, adding a *sua sponte* directive that the plaintiffs also serve Al Nour radio and the Lebanese Media Group by international courier. *Kaplan*, No. 09-CV-646 (RCL), Nov. 29, 2010 ECF Min. Order.

3

. . . which specializes in security issues and challenges relating to Lebanon and Syria, with a strong focus on Hezbollah." (*See* Second Mot. for Service, ECF No. 24; Zehavi Decl., ECF No. 24-1, ¶ 1.) The Court granted the motion on June 7, 2023, and authorized Plaintiffs to effectuate service by serving all three Hezbollah-affiliated entities within 45 days of the Memorandum and Order. (Mem. & Order, ECF No. 25.)

Plaintiffs filed proof of service on July 25, 2023, indicating that service was effected on July 25, 2023, rendering Defendant's answer due August 15, 2023. (Aff. of Service, ECF No. 26.) On October 20, 2023, Plaintiffs requested entry of default. (Req. for Certificate of Default, ECF No. 28.) On October 21, 2023, Plaintiffs filed a status report requesting that the Court permit them to proceed to seek entry of a default judgment in two stages: first, with a motion for a partial default judgment on liability; second, with a motion for a final default judgment, establishing damages. (Pls.' Status Rep., ECF No. 29.) The Clerk of Court entered default on October 27, 2023. (Certificate of Default, ECF No. 30.) On December 12, 2023, the Court granted Plaintiff's request for a two-step motion for a default judgment. (Dec. 12, 2023 ECF Order.) On February 28, 2024, Plaintiffs filed their motion for a default judgment, which the Honorable Carol Bagley Amon referred to the undersigned magistrate judge for a report and recommendation. (Notice of Mot., ECF No. 32; Mar. 1, 2024 ECF Order.) On July 25, 2024, the Court directed Plaintiffs to file supplemental briefing regarding whether the factual allegations in the amended complaint were made with sufficient specificity. (July 25, 2024 ECF Order.) Plaintiffs filed their supplemental brief on August 5, 2024. (Suppl. Br., ECF No. 36.)

4

## DISCUSSION

### I. Legal Standards for Default

Federal Rule of Civil Procedure 55 "provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b) (2021). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for a default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[3] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79,

---

[3] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2 (2021). Plaintiffs (1) requested a certificate of default in accordance with Local Rule 55.1(a), (*see* Req. for Certificate of Default, ECF No. 28), and (2) demonstrated that Defendant has failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(b), (*see* Aff. of Service, ECF No. 26; Decl. in Supp. of Req. for Certificate of Default, ECF No. 28-1, ¶ 4). At the time Plaintiffs initiated default motion practice, Local Civil Rule 55.2(c) required that a movant mail all papers submitted to the last known address of a party against whom a default judgment is sought and file proof of such mailing with the Court. Plaintiffs have made no such filing. However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Malarczyk v. Lovgren*, No. 22-504, 2023 WL 8073099, at *1 (2d Cir. 2023) (quotation marks omitted). In this case, and particularly in light of the fact that Plaintiffs do not seek entry of final judgment in this motion, the Court does not require Plaintiffs' compliance with this portion of the rule to consider their motion.

5

84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

"At the default stage, the legal sufficiency of a plaintiff's allegations is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Kaplan v. Hezbollah*, No. 19-CV-3187 (BMC) (ST), 2022 WL 17772031, at *1 (E.D.N.Y. Sept. 16, 2022) (quotation marks, alterations, and parallel citations omitted), *report and recommendation adopted*, Oct. 3, 2022 ECF Order Adopting R. & R. Accordingly,

> all elements of the Plaintiffs' claims must be plausibly alleged in the complaint, such that the complaint contains more than "naked assertions," or allegations that amount to "sheer possibility," containing instead "factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."

*Id.* (quoting *Iqbal*, 556 U.S. at 678).

Here, Plaintiffs seek a partial default judgment finding that Defendant is liable for Plaintiffs' injuries under the ATA. (Notice of Mot., ECF No 32.) For the following reasons, the Court respectfully recommends granting Plaintiffs' motion.

## II. Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors

6

include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment as to liability is appropriate.

### A. Willfulness

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Defendant's failure to respond or otherwise appear in this action supports a finding of willfulness. As discussed above, Plaintiffs sought leave to serve Defendant via alternate means and served Defendant by the means prescribed by the Court — via international courier on Al Manar television, Al Nour radio, and the Lebanese Media Group, the same manner of service deemed sufficient in *Kaplan v. Hezbollah*, No. 09-CV-646 (RCL) (D.D.C.), Nov. 29, 2010 ECF Min. Order. (*See* Second Mot. for Service, ECF No. 24; Mem. & Order, ECF No. 25; Aff. of Serv., ECF No. 26). *See also* Fed. R. Civ. P.

4(f)(3). Defendant did not respond within 21 days of service.[4] (*See* Sept. 18, 2023 ECF Order.) In light of Defendant's failure to respond, the Court weighs this factor in favor of default.

### B. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendant has failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

---

[4] The Court notes that it has considered whether to evaluate personal jurisdiction at this juncture. As the Honorable Brian M. Cogan observed in *Kaplan* — where plaintiffs also alleged ATA claims based on the same 2006 Hezbollah rocket attacks — the Second Circuit does not require that a district court "examine personal jurisdiction before entering [a] default judgment." *See Kaplan v. Hezbollah*, No. 19-CV-3187 (BMC), 2022 WL 2207263, at *2 (E.D.N.Y. June 21, 2022) (discussing the requirement of most circuits to "examine personal jurisdiction before entering [a] default judgment" and finding that the Second Circuit "takes a more permissive approach") (citing *"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123 (2d Cir. 2008); *Sinoying Logs. Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010)). Additionally, Judge Cogan found that, in light of Hezbollah's non-appearance in the case, the plaintiffs were deprived of the opportunity to conduct discovery to determine whether Hezbollah agents conducted activity that would subject them to jurisdiction, and ultimately declined to adopt a Report and Recommendation recommending denial of a motion for a default judgment for lack of personal jurisdiction. *Id.* at *3–4; *see also id.* at *3 ("[W]hile I recognize that it may be unlikely that Hezbollah would provide such discovery even if it appeared, I don't see why it should be plaintiffs who are subject to a waivable defense when Hezbollah has decided to ignore the legal process of a United States Court. That might put Hezbollah in a better position than if it had chosen to appear and provide discovery.") The Court concurs that it would be unfair to Plaintiffs to recommend dismissal for lack of personal jurisdiction, a waivable defense, and therefore declines to evaluate whether personal jurisdiction exists in the context of this default judgment. *See id.*

### C. Prejudice

"The final factor the Court must consider is whether the non-defaulting part[y] would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, Jan. 26, 2009 ECF Endorsement). In light of Defendant's failure to respond to Plaintiffs' complaint, "there is no indication that requiring Plaintiff[] to take further steps . . . would be effective in eliciting a response from Defendant[]." *Mason Tenders*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiffs would be unfairly prejudiced by denial of the motion for default.

All three *Enron Oil* factors weigh in favor of entering a default judgment. Seeing no other equitable reason for denying Plaintiffs' motion, the Court recommends entering a partial default judgment on liability as discussed below.

## III. Liability

The ATA provides, in pertinent part, as follows:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a). A United States citizen is a "national of the United States" for the purposes of the ATA. 18 U.S.C. § 2331(2); 8 U.S.C. § 1101(a)(22)(A). The statute defines "international terrorism" as activities that:

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

9

(B) appear to be intended —

(i) to intimidate or coerce a civilian population;

(ii) to influence the policy of a government by intimidation or coercion; or

(iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18 U.S.C. § 2331(1). Against this statutory backdrop, "[t]o plead primary liability under § 2333(a), Plaintiffs must plausibly allege (1) an injury to a U.S. national, (2) an act of international terrorism, and (3) causation." *Bartlett v. Société Générale de Banque Au Liban SAL*, No. 19-CV-7 (CBA) (VMS), 2020 WL 7089448, at *7 (E.D.N.Y. Nov. 25, 2020) (quotation marks omitted).

### A. Injury to a U.S. National

The Court first finds, as a threshold matter, that Plaintiffs readily satisfy the ATA's requirement that they are "national[s] of the United States." *See* 18 U.S.C. § 2333(a). As detailed in the amended complaint, Plaintiffs allege that they are United States citizens. (Am. Compl., ECF No. 21, ¶ 6; *see also* Decl. of Robert J. Tolchin Ex. 1, ECF No. 34-1 (depicting photos of Plaintiffs' passports).)

The Court next turns to the question of whether Plaintiffs adequately allege that they were injured within the meaning of the ATA, which creates a cause of action for a U.S. national who is injured "by reason of an act of international terrorism."[5] 18 U.S.C.

---

[5] The Court notes that § 2333(a) seeks to redress injuries suffered by a U.S. national to "his or her person, property, or business."

§ 2333(a); *see also Lelchook v. Islamic Republic of Iran*, No. 16-CV-7078 (ILG) (RLM), 2022 WL 7534195, at *1 (E.D.N.Y. Oct. 13, 2022), *appeal dismissed sub nom. Lelchook v. Bank Saderat PLC*, No. 22-2848, 2023 WL 3215333 (2d Cir. Apr. 11, 2023). The amended complaint states that Plaintiffs suffered severe and permanent trauma and terror. (Am. Compl., ECF No. 21, ¶¶ 26–28.) Specifically, they allege that Plaintiff Malka Kumer ("Malka") was six years old and living in Safed, Israel during the summer of 2006. (*Id.* ¶ 26.) Plaintiff Malka further alleges that she "experienced and vividly recalls . . . running back and forth between the family home and a bomb shelter," and that she was "severely and permanently traumatized" by that experience. (*Id.*) The amended complaint further states that the rocket attacks caused her "severe and lasting psychological and emotional harm." (*Id.*) Plaintiff Chana Liba Kumer ("Chana Liba"), Plaintiff Malka's sister, was five years old and also living in Safed during the summer of 2006. (*Id.* ¶ 27.) Chana Liba also has recollections about "racing to the bomb shelter" during the rocket attacks and also alleges that the attacks "severely and permanently traumatized her." (*Id.*) Plaintiff Miriam Almackies was 18 years old and living in Safed during the summer of 2006. (*Id.* ¶ 28.) She lived alone with her infant son and alleges that she "lived in constant terror of death or serious physical injury both for her infant and herself." (*Id.*) The amended complaint further states that she "experienced horrific trauma[] and suffered severe psychological and emotional injuries." (*Id.*)

In the ATA context, a person may be "injured in his or her person" when alleging non-physical injuries. *See Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 426 (E.D.N.Y. 2009) (collecting cases and declining "to dismiss plaintiffs' claims due to the lack of a physical injury"); *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 589 (E.D.N.Y. 2005) (rejecting motions to dismiss the "claims of the U.S. nationals suing based on their

11

nonphysical injuries resulting from acts of international terrorism"); *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 182 (D.D.C. 2004).[6]

Although the pleadings are relatively sparse with respect to details of Plaintiffs' emotional distress and trauma, the Court finds that the amended complaint allegations are sufficient to permit the Court "to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 ("Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . ." (quotation marks omitted)). The Court finds that Plaintiffs have adequately alleged that they have experienced severe emotional distress and trauma as a result of Defendant Hezbollah's conduct. Accordingly, the Court finds that Plaintiffs adequately allege that they were injured in a manner anticipated by the ATA.

---

[6] Plaintiffs argue in their supplemental brief that the "ATA is self-contained, freestanding and independent, [and as such] the elements of liability under the ATA are exhaustive, and ATA plaintiffs are not required to plead or prove the elements of any common law or state law cause of action." (Suppl. Br., ECF No. 36, at 3.) Plaintiffs have cited two cases for the proposition that "courts have universally held that an injury to the 'person' under § 2333(a) includes emotional harm." (*Id.* at 4 (emphasis omitted) (citing *Linde*, 384 F. Supp. 2d at 589; *Biton*, 310 F. Supp. 2d at 182). The Court concurs with Plaintiffs that the statute's plain text contemplates any injury to a person, which can include psychological or emotional harm. As other courts have observed, one of Congress's purposes in enacting the ATA was "to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law." *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1010 (7th Cir. 2002). Framed another way, the Honorable Jack B. Weinstein observed that "[t]he elements of the ATA cause of action . . . are congruent with general tort-law principles." *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474, 481 (E.D.N.Y. 2012). Emotional injury and mental suffering have long been recognized as injuries cognizable in tort. *See, e.g.*, Black's Law Dictionary (12th ed. 2024) (defining, in the context of tort actions, injury as "any harm or damage" and "personal injury" as including physical "harm caused to a person" and "mental suffering").

B. **Acts of International Terrorism & Causation**

The Second Circuit has observed that:

> For an act to constitute international terrorism, it must satisfy four separate requirements: (1) it must involve violent acts or acts dangerous to human life; (2) it must qualify as a violation of the criminal laws of the United States or of any State if it were committed within a United States jurisdiction; (3) it must appear to be intended to intimidate a civilian population, influence government policy, or affect the conduct of government by certain specified means; and (4) it must occur primarily outside the United States or transcend national boundaries.

*Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 68 (2d Cir. 2012) (internal quotation marks omitted).

Here, Plaintiffs allege that in the summer of 2006, Defendant "fired thousands of rockets and missiles at civilians in northern Israel." (Am. Compl., ECF No. 21, ¶ 24.) These attacks clearly qualify as "international terrorism" within the meaning of the ATA. *See, e.g.*, *Kaplan*, 2022 WL 17772031, at *3 (finding that the same rocket attacks by Hezbollah in the summer of 2006 constituted "acts of international terrorism"). The rocket attacks were also inherently "violent acts" that were "dangerous to human life," which would certainly have violated the criminal laws of the United States and state law had they been committed here. 18 U.S.C. § 2331(1)(A); *Kaplan*, 2022 WL 17772031, at *3 ("[T]he rocket attacks would be violations of numerous state and federal laws if they occurred here, including but not limited to attempted murder and 18 U.S.C. § 2332f."). The amended complaint also alleges numerous facts in support of the contention that Hezbollah's actions intend to "intimidate or coerce a civilian population," "influence the policy of a government by intimidation or coercion," or "affect the conduct of a government by mass destruction." (*See* Am. Compl., ECF No. 21, ¶¶ 12–23.) *See also* 18 U.S.C. § 2331(1)(B)(i)–(iii). As the rocket attacks occurred in Israel, they "occur[ed] primarily outside the territorial jurisdiction of the United States." 18 U.S.C. § 2331(1)(C).

13

For these reasons, Plaintiffs have alleged sufficient facts to plausibly plead that Defendant engaged in acts of international terrorism.

Finally, the Court also finds that Plaintiffs have adequately pleaded causation. The ATA requires that a plaintiff's injury must be "by reason of an act of international terrorism." 18 U.S.C. § 2333(a). A plaintiff must allege that the "defendant's conduct was a proximate cause of plaintiff's harm, i.e. the conduct was a substantial factor in the sequence of responsible causation and whose injury was reasonably foreseeable or anticipated as a natural consequence." *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 46 (E.D.N.Y. 2019) (emphasis and quotation marks omitted); *see also Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474, 481 (E.D.N.Y. 2012) ("'But for' cause cannot be required in the section 2333(a) context.") That Defendant Hezbollah itself carried out the attacks that harmed Plaintiffs is enough to satisfy proximate causation. *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 331 (2d Cir. 2018) (stating that the terrorists who committed the "attacks at issue caused plaintiffs' injuries, whether as a matter of proximate or but-for causation," in a case under the ATA).

## CONCLUSION

For the foregoing reasons, the Court recommends finding that a partial entry of default judgment is warranted, finding that Plaintiffs have established that Defendant violated the ATA.

\*   \*   \*   \*   \*

This report and recommendation will be filed electronically. The Court also respectfully directs Plaintiffs to provide a copy of this report and recommendation to Defendant forthwith and to file proof of same by **August 14, 2024**. Mailing shall be effected via international courier delivery to Al Manar television, Al Nour radio, and the Lebanese Media Group. Objections to this report and recommendation must be

14

filed, with a courtesy copy sent to the Honorable Carol Bagley Amon at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

    **SO ORDERED.**

Dated: Brooklyn, New York
       August 7, 2024

                                      */s/ Taryn A. Merkl*
                                      TARYN A. MERKL
                                      UNITED STATES MAGISTRATE JUDGE